**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RHEANNE HALKER,**

               **Plaintiff,**                      **Case No. 2:13-cv-893**
                                               **JUDGE GREGORY L. FROST**
     **v.**                                **Magistrate Judge Terence P. Kemp**

**BOB EVANS FARMS, INC.,**

               **Defendant.**

**OPINION AND ORDER**

This matter is before the Court for consideration of the following filings:

(1) a motion to strike (ECF No. 38) filed by Plaintiff, a memorandum in opposition (ECF No. 39) filed by Defendant, and a reply memorandum (ECF No. 40) filed by Plaintiff; and

(2)  a motion for summary judgment (ECF No. 26) filed by Defendant, a memorandum in opposition (ECF No. 33) filed by Plaintiff, and a reply memorandum (ECF No. 37) filed by Defendant.

For the reasons that follow, this Court **DENIES** Plaintiff's motion to strike (ECF No. 38) and **GRANTS** Defendant's motion for summary judgment (ECF No. 26).

**I.  Background**

Plaintiff, Rheanne Halker, is a former employee of Defendant, Bob Evans Farms, Inc., who worked from October 1983 to January 2011 as a server in a restaurant located in Lima, Ohio.  During this period of employment, Plaintiff regularly had to carry trays holding plates of food, cups, and beverages.  In 2010, Plaintiff began complaining of shoulder pain, and she eventually notified her supervisors that she needed shoulder surgery.  Plaintiff indicated that she

1

would need medical leave for the surgery.  As discussed more fully below, she delayed the surgery for a period of time, first allegedly due to a busy holiday season at the restaurant. Plaintiff never took medical leave after the holiday, however, because allegations of misconduct arose that resulted in her suspension, an investigation, and the eventual termination from her employment.

Following her termination, Plaintiff met with her surgeon.  She told him that she had delayed having her surgery due to her busy lifestyle and financial reasons.  Plaintiff continued to delay her surgery until January 2012.  That same month, Plaintiff also filed a complaint in the Franklin County Court of Common Pleas.  Proceedings in that court led to Defendant filing a motion for summary judgment, which the state court eventually granted.  This resulted in the dismissal without prejudice of the original complaint on the grounds that Plaintiff had filed her case in the wrong county in contravention of state law.  Rather than re-filing her case in the correct county, however, Plaintiff filed a motion for leave to file an amended complaint.  The state court granted the motion, and Plaintiff filed a two-count amended complaint in which she re-asserts her state law claim for wrongful termination in violation of public policy (Count I) and asserts for the first time a federal claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. (Count II).[1]  (ECF No. 4 ¶¶ 16-21.)

Defendant removed the action from state court in September 2013 (ECF No. 1) and subsequently filed a motion for summary judgment (ECF No. 26).  Plaintiff in turn has filed a

---

[1]  There appears to be some discrepancy between the dates assigned to the state court developments in the briefing and the dates contained on the state court documents filed with this Court.  The exact dates do not matter for purposes of the analysis set forth herein; what matters is that Plaintiff eventually filed an amended complaint that Defendant removed to this Court.

motion to strike portions of Defendant's reply memorandum (ECF No. 38).  The parties have completed briefing on both motions, which are ripe for disposition.

## II.  Plaintiff's Motion to Strike

After the summary judgment briefing had closed, Plaintiff filed a motion to strike portions of Defendant's reply memorandum.  (ECF No. 38.)  Plaintiff specifically targets those portion of the briefing that address the potential application of the honest belief rule.  Her theory is that Defendant has impermissibly raised the rule and related arguments for the first time in the reply memorandum.  This argument is without merit.

The point of a reply memorandum is to present a targeted response to the specific arguments raised in a memorandum in opposition. Plaintiff's characterization of both Defendant's opening summary judgment brief and the reply brief are thus too narrow. Defendant's opening brief addressed pretext, but Defendant did not engage in a proactive anticipatory response to arguments Plaintiff had not yet made.  The reply memorandum invocation of the honest belief rule is then responsive to the exact arguments that Plaintiff raised in her memorandum in opposition and constitutes a necessarily deeper discussion of the pretext issue originally raised in Defendant's opening brief.  In other words, because the memorandum in opposition pursued pretext, that pursuit and the manner of its expression necessitated responsive attention to the honest belief rule in the reply memorandum.  Defendant did not suddenly raise an untouched argument for the first time and unprompted by Plaintiff.

The Court therefore **DENIES** the motion to strike.  (ECF No. 38.)

3

### III.  Defendant's Motion for Summary Judgment

#### A.  Standard Involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

#### B.  Analysis

In Count I of the amended complaint, Plaintiff re-asserts her state law claim for wrongful termination in violation of public policy.  Defendant asks this Court to grant summary judgment

on this claim on the grounds that the claim has already been decided in this litigation in the state court's May 10, 2013 decision.  (ECF No. 1-1, at Page ID # 31-34.)  That decision found that the state court lacked subject matter jurisdiction over the wrongful termination claim because Plaintiff had failed to file the claim in the county in which she was employed, which is a requirement under Ohio Revised Code § 4123.90.  The state court therefore dismissed the original complaint without prejudice.

Plaintiff does not argue against summary judgment on Count I in her memorandum in opposition.  In fact, she does not address the claim at all.  This matters because the Sixth Circuit has held that "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."  *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013).  The Court therefore recognizes that Plaintiff's memorandum in opposition constitutes abandonment of her Count I state law claim.  *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.*, 65 F. App'x 19, 24–25 (6th Cir. 2003) (stating that a plaintiff's failure to brief a claim in the district court is an abandonment of the claim); *Campbell v. Nally*, No. 2:10–cv–1 129, 2012 WL 4513722, at *12 (S.D. Ohio Oct.1, 2012) (holding that a perfunctory statement in a summary judgment memorandum in opposition that "material facts remain in dispute" in regard to claims amounts to abandonment of those claims); *Murphy v. Ohio State Univ.*, No. 2:11–cv–238, 2012 WL

4499027, at *4 (S.D. Ohio Sept.28, 2012) (explaining that a plaintiff's failure to present actual argument on a claim in a memorandum in opposition constitutes abandonment of that claim); *Colston v. Cleveland Pub. Library*, No. 1:12–CV–204, 2012 WL 3309663, at *2 n.2 (N.D. Ohio Aug.13, 2012) (deeming a claim abandoned and granting summary judgment when a plaintiff "did not respond or even mention [the] claim in her oppositions to Defendants' motions for summary judgment"); *Thomas v. Starbucks Corp.*, No. 3:10–1158, 2012 WL 1900919, at *4 (M.D. Tenn. May 24, 2012) (holding that a district court can decline to consider a claim's merits when a plaintiff fails to address the claim in a summary judgment response); *EEOC v. Home Depot USA*, No. 4:07–cv–143, 2009 WL 395835, at *17 (N.D. Ohio Feb.17, 2009) ("When a plaintiff asserts a claim in a complaint but then fails to delineate that claim in her brief in opposition to summary judgment, that claim is deemed abandoned."); *Anglers of the Au Sable v. United States Forest Serv.*, 565 F.Supp.2d 812, 839 (E.D. Mich.2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment.").  Defendant is thus entitled to summary judgment on the abandoned Count I.

In Count II of the amended complaint, Plaintiff asserts a claim under the FMLA.  The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for ... a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  The Sixth Circuit has explained that "to invoke the protection of the FMLA, an employee must provide notice [to the employer] and a qualifying reason for requesting the leave." *Brohm v. JH Properties Inc.*, 149 F.3d 517, 522 (6th Cir. 1998) (citing *Manuel v. Westlake Polymers Corp.*,

66 F.3d 758, 762 (5th Cir. 1995)).  An employee need not specifically mention the FMLA to provide adequate notice.  *Id.*  Rather, for adequate notice, the employee need only convey information that is reasonably adequate to inform the employer that he is making a request to take leave for a serious health condition that renders him unable to perform the duties of employment. *Id.*

Plaintiff's FMLA claim consists of two components, one alleging interference under 29 U.S.C. § 2615(a)(1) and one alleging retaliation under 29 U.S.C. § 2615(a)(2).  To prevail on the interference component, Plaintiff must prove by a preponderance of the evidence that (1) she is an "eligible employee," (2) Defendant is an "employer" covered under the FMLA, (3) she was entitled to take FMLA leave, (4) she gave proper notice of her intention to take leave, and (5) the employer somehow used the leave against her and in an unlawful manner, as provided in either the FMLA or its implementing regulations.  *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005); *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003); *see also Bradley v. Mary Rutan Hosp. Assoc.*, 322 F. Supp. 2d 926, 940 (S.D. Ohio 2004).  To prevail on the retaliation component, Plaintiff must prove under the same burden that (1) she availed herself of a protected right under the FMLA, (2) Defendant knew of his exercise of a protected right, (3) she was adversely affected by an employment decision made by Defendant, and (4) there was a casual connection between the exercise of the protected right and the adverse employment action.  *See Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004) ( identifying " 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)"); *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990).  *See also DeBoer v. Musashi Auto Parts, Inc.*, 124 F. App'x 387, 391 (6th Cir. 2005); *Skrjanc v. Great Lakes Power*

*Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

Because this is an indirect evidence case, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to both Plaintiff's interference and retaliation claims. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). Under this approach, "if the plaintiff establishes a *prima facie* case as to either an interference or retaliation claim under the FMLA, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Gates v. U.S. Postal Serv.*, 502 Fd. App'x 485, 489 (6th Cir. 2012). Then, "[i]f the employer satisfies its burden of production, the plaintiff must show that the proffered reason is a pretext for unlawful discrimination." *Id.*

This Court therefore begins with the *prima facie* case question. There is no dispute between the parties that Plaintiff was an eligible employee qualified to take proper FMLA leave under 29 U.S.C. § 2612(a)(1). *See* 29 U.S.C. § 2611(2)(A)(i) & (ii). There is also no dispute over whether Defendant is an eligible employer under 29 U.S.C. § 2611(4), or whether Plaintiff had a serious health condition within the meaning of the FMLA. All of these issues favor Plaintiff's claim.

One issue in dispute is whether Plaintiff provided proper notice of her intent to take FMLA leave under 29 C.F.R. § 825.302 so as to satisfy the fourth prong of a *prima facie* case of interference (that she gave proper notice of her intention to take leave) and the first prong of a *prima facie* case of retaliation (that she availed herself of a protected right under the FMLA). Defendant argues that Plaintiff failed to request a particular time off but only informed her supervisor of the need for time off for unscheduled surgery at some unspecific point in the

8

future.  This argument tracks the Eighth Circuit's holding that

> [a]n [employee's] attempt to satisfy the notice requirements by an indication that
> [s]he might have to be absent at some unforeseen time in the future satisfies neither
> the requirement of notice of "the anticipated timing and duration of the leave," 29
> C.F.R. § 825.302(c), nor the requirement of notice "as soon as practicable if dates .
> . . were initially unknown," 29 C.F.R. § 825.302(a).

*Bailey v. Amsted Indus. Inc.*, 172 F.3d 1041, 1046 (8th Cir. 1999).  Although this Court agrees

that Plaintiff failed to provide particularized notice to Defendant, the Court need not depend on

this point and its related, often unhelpful testimony to dispose of either component of Plaintiff's

FMLA claim.  Additional reasons defeat Count II.

Defendant posits that Plaintiff cannot establish a *prima facie* case of interference because

there is no evidence of a denial of FMLA rights.  The company argues that Plaintiff has failed to

point to evidence that anyone threatened Plaintiff's employment if she took FMLA leave, that

anyone made critical statements regarding such leave, or that anyone discouraged her from

taking FMLA leave.

There is some evidence in the record that General Manager Dominic Stoner asked

Plaintiff to postpone her not-yet-scheduled surgery until after the year-end 2010 holidays.  When

asked about the scheduling of her surgery, Plaintiff testified at her deposition as follows:

> A. I was going to schedule my surgery in October.  I waited until November.
> Q. Why?
> A. Because we're busy in November, and I didn't want to put them out, Bob
> Evans.
> Q. You were going to schedule it in October?
> A. Yes.
> Q. And you scheduled it for November, because they're busy in November?
> A. No.  I was going to schedule it for October, so therefore, they're busy and

I didn't want to shortchange them being busy.  I worked for them until after Thanksgiving.

Q.  So originally, you intended to schedule it for October.

A.  Right.

Q.  Was it your choice to postpone it until after October?

A.  No.

Q.  Who made the decision, then?

A.  My management, Dominick [*sic*], asked if I could stay until after Thanksgiving.

Q.  And you agreed?

A.  Yes.

Q.  Why did you agree?

A.  Because I'm a – I don't like putting people out, putting people in jeopardy.

(Halker Dep., ECF No. 28-1, at Page ID # 365.)  Additional testimony then targeted the delay in scheduling the surgery for November:

Q.  Did you schedule your surgery in November?

A.  No.  Because then I was asked to wait until after the holidays.

Q.  Who asked you?

A.  Dominick [*sic*].

Q.  And you agreed?

A.  I was kind of put on the spot.

Q.  So you agreed?

A.  I didn't know what else I -- I mean, I -- did I agree?  I didn't -- I wanted to go in December for my surgery.

Q.  In December?

A.  In December, I wanted to take a medical leave and have my surgery.

Q.  But you didn't?

A  I did not.

Q.  Did you schedule it for January?

A.  In the meantime, I waited until after the holidays, because he asked me to, to postpone it.

10

(*Id.*)  Although there is some waffling here and elsewhere in Plaintiff's deposition between feeling concerned for her employer and feeling pressured by her employer, there is support for Plaintiff's subjective feeling of discouragement from taking leave.  This could matter because the Sixth Circuit has recognized that " 'interfering with' the exercise of an employee's rights under the FMLA includes 'discouraging an employee from using [FMLA] leave." *Arban v. West Publ'g Corp.*, 345 F.3d 390, 402 (6th Cir. 2003)(quoting 29 C.F.R. § 825.220(b)).

Defendant counters that it does not ultimately matter because the FMLA imposes an obligation on an employee to make reasonable efforts to schedule leave for foreseeable, planned medical treatment whenever possible to avoid undue disruption of an employer's business.  *See* 29 U.S.C. § 2612(e)(2)(A); *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 559 (6th Cir. 1999) (recognizing that "[t]he statute places a duty on an employee taking foreseeable leave" and "requires that an eligible employee not inconvenience an employer by scheduling a foreseeable treatment in an avoidably disruptive way").  Objectively, this casts Stoner's request in the correct context: a permissible request that aligns with FMLA provisions and not a demand or coercive discouragement chilling the exercise of FMLA rights.

This leaves Plaintiff's termination as it relates to the interference component of Count II. The Sixth Circuit has explained that a plaintiff cannot succeed on an interference claim "if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar*, 443 F.3d at 507.  Defendant argues that it terminated Plaintiff's employment because she engaged in conduct that violated company policy set forth in the Restaurant Hourly Employee Handbook.  One of the rules in the handbook prohibits threatening or abusive language, malicious statements, or offensive or disorderly conduct.  The handbook

explains that under Defendant's progressive discipline policy, a violation of such a company rule can result in counseling, a written warning, and suspension.  Another handbook provision provides, however, that Defendant can depart from this general policy and proceed to immediate discharge in order to preserve the well being of the company, its employees, or its guests.

Relying on these handbook provisions, Defendant asserts that Plaintiff's termination was not for having requested FMLA leave, but for having violated the company policy against offensive or disorderly conduct.  Defendant directs this Court to January 2011, when General Manager Stoner received a call from Diane Bloom, the assistant manager on duty at the restaurant at which Plaintiff worked.  Bloom informed Stoner that another server, Sara Bailey, had complained that Plaintiff had shown her an animated video on Plaintiff's cell phone in which a woman was giving a man oral sex.  Stoner contacted Bailey and confirmed the allegation.  He then called Plaintiff and informed her that she was suspended pending an investigation.  As part of this investigation, Stoner promptly spoke with multiple restaurant employees.  These conversations revealed that in addition to showing the oral sex video, Plaintiff had also told various employees that while running on a treadmill she had had one or more orgasms, had shown a photo of male genitalia (possibly of a customer) to employees, had referred to Bloom as a "cunt" while at work, and had made various sexual remarks.  Stoner perceived the interviews with the co-workers and Plaintiff's history of misconduct to indicate intentional and believable behavior on Plaintiff's part.  He discussed his findings with human resources and with Jonathan Singer, the Area Coach who had supervisory responsibility for the area in which the restaurant was located, and Plaintiff was discharged from her employment.

The numerous incidents of misconduct that Stoner investigated, especially, the cell phone

incident and the treadmill incident, stand uncontroverted despite Plaintiff's conflicting

testimony.  For example, the following exchange occurred during Plaintiff's deposition:

Q        Okay.  You worked with a woman named Sara Bailey, correct?

A        Yes.

Q        And at some point using your combined cell phone/camera, you showed Ms. Bailey a video of a man receiving oral sex from a woman?

A        That is not true.

Q        That's not true?

A        No.

Q        What video did you show her?

A        I showed her -- I was showing her pictures of my children on the couch with their two dogs.  And she was looking over the shoulder – over my shoulder as I was scanning through my pictures.

Q        And what did she see?

A        I showed her pictures of my kids and two dogs. I don't know what she seen.

Q        Did you have a video on your camera --

A        I –

Q        Let me finish the question.  Did you have a video on your camera of people engaged in oral sex?

A        No.

Q        Did you have a video on your camera of cartoon characters engaged in sex?

A        No.

Q        Have you ever had a video on your cell phone/camera of sexual activity?

A        No.

Q        Did you ever have a picture of a man's penis on your phone?

A        No.

Q        Did you ever discuss with your fellow employees having orgasms when you were on the treadmill?

A        No.

          (Recess taken.)

          (Record read.)

          THE WITNESS: The answer is yes.  I misunderstood the question.

BY [counsel]:

13

Q      How did you misunderstand the question?

A      I just misunderstood.  I don't know.

Q      Tell me about your conversations with your fellow employees about orgasms on treadmills.

A      I just talked about it one time to Crystal.  She thought it was funny and had to share it with the whole restaurant.

Q      What did you tell Crystal?

A      I told her to be quiet.

Q      No.  What did you tell Crystal about the treadmill?

A      That I was up -- I had a new membership at the Y. And I got on the treadmill for a mile, and I had a light orgasm.  I mean how many people do that? I think that's pretty cool.

Q      Did you have any discussion -- Did you have that discussion with anyone else?

A      No.

Q      And it's your testimony that you never showed any employee a picture of a man's penis on your cell phone?

A      No.

Q      Okay. Did you ever -- To the best of your knowledge, did Sara see any picture or video on your cell phone involving sexual activity?

A      Not that I'm aware of, no.

Q      Okay.  Did you have any such picture or video on your cell phone?

A      No.

Q      Did you ever text Sara after your employment was terminated?

A      I told her that I actually took -- It took me a while to forgive her for her immaturity of going to the management without talking to me as a friend if I offended her.  I know she's a Christian girl. And I did text her and let her know how I felt.  And I washed my hands, and I have not talked to are [*sic*] her since.

Q      Why were you apologizing to her if all she saw on your phone was a picture of your kids and dogs?

A      Well, apparently, according to what Dominic wrote, it was an extreme (sic) of what her evaluation of what she saw when she was looking over my shoulder. I was not aware. And that's how all this come about. And I apologized just --  If she even saw it as I was going through my phone and I offended her, I apologized to her from my heart.

Q      So you did have some pictures and videos of sexual activity on your phone, correct?

14

A       Well, not for anybody to see but my own eyes.

Q       Okay.  You've lied twice about this particular issue.  I'm going to ask you one last time.  Did you have on your cell phone/camera a picture or a video portraying sexual activity?

A       Cartoon.

Q       Okay. It's your testimony that if Ms. Bailey saw that, that was accidental?

A       It was an accident, and I apologized.


(Halker Dep., ECF No. 27-1, at Page ID # 320-21.)  Later, after being handed an exhibit,

Plaintiff testified as follows:

Q       Okay. This indicates -- It reads "Crystal Kelly" across the top, "3:00 p.m., 1-14-11."  It says "Rheanne shown (sic) Crystal a picture on her phone of a regular customer's male private area last week on Friday.  Rheanne told Crystal that while she was running on the treadmill she had multiple orgasms and it was great."
A       That's not true.
Q       First of all, did you ever show Crystal a picture on your phone of any man's genitals?
A       No.
Q       Did you have any pictures of a man's genitals on your phone?
A       No.
Q       You did have a discussion with Crystal about having an orgasm on the treadmill, though; is that right?
A       She thought it was hysterically funny and wanted me to tell the management, and I said no, it was personal.
Q       Okay. Let me try it again.  Did you tell Crystal that you had an orgasm when you were running on the treadmill?
A       Yes.
Q       Okay.  Do you know who Terry Mullenhour is?
A       Yes, I do.
Q       Who is she?
A       She's an employee at Bob Evans.
Q       Okay.  Did you have a discussion with her about having an orgasm on the treadmill?
A       No.
Q       Have you ever discussed with Terry whether or not she told Dominic that you told her about an orgasm on the treadmill?
A       No.  No.  I only told Crystal.


(*Id.* at Page ID # 322.)  Although this exhausting if not exhaustive testimony presents several

15

discrepancies, Plaintiff has failed to present a genuine issue of material fact in regard to her purported misconduct.

It does not ultimately matter whether Plaintiff purportedly reported that she had had multiple orgasms on the treadmill or simply one orgasm, just as it does not ultimately matter whether the oral sex image was a cartoon, a photograph, or a video.  What matters is that regardless of Plaintiff's initial lies and attempts at strategic descriptions and carefully parsed evasions (in her deposition in an a subsequent, impermissibly contrary affidavit), Plaintiff at times has admitted that she indeed revealed an oral sex image to at least one other employee and that she indeed told at least one other employee that she had a sexual experience on a treadmill.  This violated company policy.

On their face, the foregoing incidents, both taken in isolation and considered together, present a lawful reason for terminating Plaintiff's employment that does not present an interference violation of the FMLA.  This is because, as the Sixth Circuit has held, "the right to non-interference with medical leave . . . is not absolute. *Arban*, 345 F.3d at 401.  Rather, an employee such as Plaintiff " 'who requests FMLA leave [has] no greater protection against . . . her employment being terminated for reasons not related to . . . her FMLA request than . . . she did before submitting that request.' "  *Id.* (quoting *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)).  This means that "[a]n employee lawfully may be dismissed, preventing [her] from exercising [her] statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."  *Id.  See also* 29 C.F.R. § 825.216(a).  Defendant's proffered reason for terminating Plaintiff's employment satisfies this rule.  Such action was not unprecedented within the

16

company.  Stoner testified that some employees had previously been terminated from employment based on their first offense of making comments of a sexual nature while other employees had been terminated based on their first offense of disorderly conduct.

The discipline that Defendant imposed on Plaintiff was based on her crass misconduct in violation of company policy and not on her having requested FMLA leave.  This legitimate, nondiscriminatory reason for discharging Plaintiff also informs the retaliation component of her FMLA claim.  Because Defendant's intent is at issue under this component, the timing of the company's actions could matter.  But "[t]emporal proximity between the protected activity and the adverse employment action does not give rise to a finding of causal connection unless 'coupled with other indicia of retaliatory conduct.' " *Cox-Frietch v. Ohio, Ohio Bureau of Worker's Compensation*, No. 1:10-cv-323-HJW, 2012 WL 508977, at *10 (S.D. Ohio Feb. 15, 2012) (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333–34 (6th Cir. 2007)).  Two comments are therefore warranted.

First, Plaintiff's temporal proximity argument conveniently relies on the purported request for leave immediately preceding her termination while concurrently neglecting to credit her alleged periodic requests in the preceding months.  In other words, she attempts to tie the allegedly retaliatory act to a single demand for leave while glossing over numerous other purported demands that invoked no such "retaliation."

Second, there is simply no other indicia of retaliatory conduct here.  Instead, there is evidence of Defendant's 2009 approval of prior FMLA leave for Plaintiff that rebuts any allegation of a causal connection between Plaintiff's latest request for FMLA leave and her termination. *See Brown v. HCF of Shawnee, Inc.*, No. 3:07-CV-818, 2008 WL 3200274, at *4

17

(N.D. Ohio Aug. 5, 2008) ("An employer's prior approval of FMLA leave and its granting of requests for FMLA leave to employees has been found to rebut the allegation that a causal connection exists between a plaintiff's discharge and her FMLA leave request.").  More notably, there is also Plaintiff's inappropriate conduct that constituted a violation of company policy enabling immediate termination, which coincidentally occurred close in time to the FMLA request.  Plaintiff's FMLA leave request does not insulate Plaintiff from her poor conduct.  This scenario means that Plaintiff has failed to establish the requisite casual connection between the exercise of her FMLA rights and the adverse employment action, which means that she has failed to establish a *prima facie* case of retaliation.  *See Hoge*, 384 F.3d at 244.

Even assuming *arguendo* that Plaintiff has established *prima facie* cases of interference and retaliation–if, for example, there could be interference because there is indeed a fact question as to whether Plaintiff was intimidated by management into delaying her leave, or if the temporal proximity sufficiently supports retaliation–Plaintiff's FMLA claims still fail.  This is because Defendant's articulation of its legitimate, non-discriminatory reason for her termination proves dispositive of Plaintiff's interference and retaliation claims under *McDonnell Douglas* burden shifting.

Plaintiff argues against such a conclusion on the grounds that Defendant's proffered explanation for her termination is pretext.  The Sixth Circuit has explained that "[a] plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action."  *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012).  Under any of the three methods of establishing pretext, a plaintiff " 'always bears the burden of producing sufficient

18

evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant [] intentionally discriminated against [her].' " *Id.* (quoting *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011)).

The essence of Plaintiff's pretext argument is that the proffered reason was not the actual motivation for her termination and that the reason had no basis in fact.  Plaintiff points out that Defendant did not follow its progressive discipline policy in terminating her, in part by pointing to her own long history of various misconduct that garnered various degrees of discipline during the course of her employment.  This egocentric portrayal of the company's system of discipline conflates how she was disciplined for dissimilar misconduct with how the company disciplines employees for conduct of the sort involved here.  It also ignores that Defendant's discipline policy permits the company to proceed directly to termination from employment on a first offense, which the evidence indicates Defendant has done previously with other employees, some of whom had engaged in misconduct of a sexual nature.

Plaintiff also suggests that the proffered reason had no basis in fact because Stoner's investigation was a mere fishing expedition to create a basis for terminating her employment. The Sixth Circuit has held that the no basis in fact method of establishing pretext is

> "essentially an attack on the credibility of the employer's proffered reason . . . [and] consists of showing that the employer did not actually have cause to take adverse action against the employee based on its proffered reason, and thus, that the proffered reason is pretextual.  Where the employer can demonstrate an honest belief in its proffered reason, the inference of pretext is not warranted.  Thus, this Circuit has adopted the 'honest belief rule.'  Under [this] rule, an employer's proffered reason is considered honestly held where the employer can establish it reasonably reli[ed] on particularized facts that were before it at the time the decision was made.  Thereafter, the burden is on the plaintiff to demonstrate that the employer's belief was not honestly held.  An employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact."

*Seeger*, 681 F.3d at 285 (quoting *Joostberns*, 166 F. App'x at 791 (citations and internal quotation marks omitted)).  Application of the honest belief rule proves dispositive here.

An employer may rely on the honest belief rule in defending against both FMLA interference claims and retaliation claims.  *See Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 795 (6th Cir. 2006); *Kitts v. Gen. Tel. N.*, No. 2:04–CV–173, 2005 WL 2277438, at *12 (S.D. Ohio Sept. 19, 2005).  *See also Hopkins v. City of Columbus*, No. 2:12-cv-336, 2014 WL 1121479, at *7-8 (S.D. Ohio Mar. 20, 2014).  To defeat such application here, Plaintiff "is required to show 'more than a dispute over the facts upon which the discharge was based.' " *Seeger*, 681 F.2d at 285 (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001)).  This is because courts do not require "that the employer's decision-making process under scrutiny 'be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.' " *Id.* (quoting *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir. 1998)).  Moreover, the court of appeals has explained that " 'the falsity of [a] [d]efendant's reason for terminating [a] plaintiff cannot establish pretext as a matter of law' under the honest belief rule." *Id.* (quoting *Joostberns,* 166 F. App'x at 794 (footnote omitted)).  What this means is that "[a]s long as the employer held an honest belief in its proffered reason, 'the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless.' " *Id.* at 285-86 (quoting *Smith*, 155 F.3d at 806)).

Plaintiff has offered no evidence whatsoever to support her self-serving speculation that Defendant did not honestly believe in its proffered grounds for her termination.  Instead, the evidence presents a sufficiently thorough investigation that uncovered numerous instances of

20

misconduct.  As noted, it does not matter if Plaintiff was mistaken as to whether a video, a cartoon, or a photographic image of oral sex was involved, and it does not matter whether Plaintiff shared news of having had only a single orgasm or multiple orgasms with only one co-worker or multiple co-workers.  Any minor error as to the details of the numbers involved does not matter.  The Sixth Circuit has explained that "[a]n employer's invocation of the honest belief rule does not automatically shield it, because the employee must be afforded the opportunity to produce evidence to the contrary, such as an error on the part of the employer that is 'too obvious to be unintentional.' " *Seeger*, 681 F.3d at 286 (quoting *Smith,* 155 F.3d at 807 (citations and internal quotation marks omitted)).  Thus, what matters is that Defendant honestly believed at least one such incident occurred, that management believed the incidents were the result of intentional behavior, that each incident violated company policy and led to Plaintiff's discharge from employment, and that Plaintiff has now failed to present an error too obvious to be unintentional.

Defendant made a reasonably informed and considered decision to terminate Plaintiff's employment based on a sufficient even if not an optimal investigation into her misconduct.  Consequently, the honest belief rules applies, and Defendant is also entitled to summary judgment on Count II.

### IV.  Conclusion

For the reasons that follow, this Court **DENIES** Plaintiff's motion to strike (ECF No. 38) and **GRANTS** Defendant's motion for summary judgment (ECF No. 26).  The Clerk shall enter judgment accordingly and terminate this case on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

       /s/ Gregory L. Frost       
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE